May it please the court. Regrettably after seven years of litigation, a previous appeal, and two trials, we are back here still attempting to provide for Ms. Reyazuddin an end to Montgomery County's disparate treatment of her based on her blindness and the affirmative provision of what this court said she is entitled to a meaningful equal employment opportunity, which it is defined as an opportunity to achieve the same level of performance as is available to non-disabled employees having similar skills. The county has made a number of accommodations for appellant. What more does she want at this point? She wants to be treated like all other customer service representative twos, and that includes what the county has done is give Well, I mean, that's not the test, right? The test is she needs to be reasonably accommodated, which doesn't necessarily equate to identical treatment. What is it? Well, first of all, Judge Chasnow found that she had been reasonably accommodated, so obviously you dispute that. What is it where the county has fallen short? Ms. Reyazuddin, there are a number of what the county described as essential tasks that Ms. Reyazuddin still can't do that she could do given the appropriate accommodations. For example, she alone does not use this Siebel computer system that is used by customer service representatives and doesn't use the CTI toolbar to answer calls. This means that alone among customer service representatives, Ms. Reyazuddin doesn't get the initial intake information that someone else might gather having first answered the phone, determined that it was in the subject area that Ms. Reyazuddin is covering. She then has to go over it again. And is it in the record that that is something that the county could do reasonably, could do within, you know, within some reasonable range of options? Yes, Your Honor. The record reflects that the county put in, installed a new version of the Siebel system and that it is accessible to Ms. Reyazuddin with some minor modifications sort of known as scripting. And that's scripting is add-on computer code to allow JAWS, which is the software program that non-visual people use to read computer output, that scripting could be done. It would not be very expensive. I don't think the county challenges the ability to do the scripting. The county's position is, well, we should just decide later, wait and see if Siebel provides an update that takes care of this problem on its own. I want to say also the importance of the tasks that Ms. Reyazuddin is not allowed to perform in the same way as her colleagues isn't simply I just want to do it the same way as everyone else. The importance is that Ms. Reyazuddin is measured by the same work metrics as her peers in terms of number of calls she's supposed to answer, amount of time she is supposed to spend on the phone with each caller, documenting the calls. She, however, is at a disadvantage because without these tools that others are using, she is slowed down. She's slowed down in the way that she's supposed to answer. So the district court had a bench trial more or less on this, right? Yes. And made a finding that I think is sort of contrary to what you're saying that your client had been provided a meaningful equal employment opportunity, that there was no real disadvantage to her flowing from the accommodation that the county had made. So what do we do with that? I think it is clearly erroneous, Your Honor, as reflected in the record. And even if the court were to conclude that it is not clearly erroneous, that finding, the district court erred as a matter of law in failing to If we disagree with you and find that the district court did not err, including that your client had been reasonably accommodated, what form of injunctive relief would be entered? I mean, what would an order look like? Understood. In the event that this court were to determine that no affirmative relief is required, and the affirmative relief is really are the talk about briefly, there would still need to be prohibitory, some form of prohibitory injunction to make sure that Montgomery County maintains accessibility for Ms. Rae Azzedine. And this is not, the need for this flows from two areas. One is it should be remembered that Ms. Rae Azzedine went from an accessible employment position at Montgomery County to an inaccessible one. And by accessible, I mean one where she could use the computer system with this JAWS program. So it is not an idle sort of concern that the county might decide that there is some other new program that works better than what is in place now and that those accommodations will no longer work and therefore she needs relief. And as a legal matter, this court has long held that. But before you get to that, I'm not sure that you answered the specific question I had. We have to write the order, right? We have to write the order. Perhaps the district court would ultimately have to do that if we remanded. What would the district court say to the county that would satisfy this prohibitory injunction that you described? The injunction should order that Montgomery County maintain the MC311 call center excessively for Ms. Rae Azzedine's use. Okay. For as long as she is there. In the way it is doing now? Well, at least, we of course think that what they are doing now is still not But assuming that it is, you want an injunction that says prohibiting Montgomery County from failing to continue to offer the same accommodation it is offering now. I would say the same or better. I don't want to You want an injunction to stop something that might happen in the future but is not happening now? Other than the already known inaccessible portions of the CSR to position, yes, we want to make sure that the program, the work site is maintained as being eligible. Being available to Ms. Rae Azzedine. The county, the history of this case demonstrates that the county pays no hand when it makes decisions. And then acts only when prompted by litigation. And I would point to the fact that Ms. Rae Azzedine started speaking to her supervisors in 2008 or 2009 when she first heard about this coming call center and everybody kept saying, oh, yes, yes, it will be fine, you will be okay. That didn't happen. In 2009, November of 2009 when her peers were moved over there, she was left behind. It was then not until October 2015, just before the jury trial, a couple of months before the jury trial, that Montgomery County made this job offer to work sort of out of the Columbia Lighthouse for the Blind. Montgomery County then did nothing else about accommodating Ms. Rae Azzedine until shortly before the bench trial when in November of 2016, I believe, it's been a long time, finally moved Ms. Rae Azzedine to 311 using, I might add, as the record reflects, the very same technology that had been in place from day one. And it clearly could have done, could have taken those steps much earlier and did not until it faced the prospect being ordered to do so. There is also the, there was in the discussion of one of the features that Ms. Rae Azzedine was unable to use, which is this sort of message that told customer service representatives what their status was, whether they were on the system as available or doing something else. Ms. Rae Azzedine couldn't use that because it was a visual prompt and there was no text accompanying it. At the beginning of the bench trial, the testimony from the county was, from the county employees was the aux codes are not available. When Ms. Leslie Hamm testified towards the end of the case, she said, oh, yes, the aux codes are available to Ms. Rae Azzedine. And the follow-up question was, well, since when? And she said, well, since yesterday. We heard the testimony in court, so we went and did something about it. That really is not the way it's supposed to happen. Can I just say, so that you have a chance to sort of address my concern, I understand that sort of, look at the paper record and read it two different ways. Was the county in good faith trying to accommodate and getting it wrong, or was the county really dragging its feet in a way that suggests kind of a real resistance to compliance with the law? This district court had the case in front of it for so many years, and the district court made a judgment that there really is no concern here, that the county is operating in bad faith. And I don't know how standard of review is abuse of discretion, and how do I get past, why am I in a better position to make that judgment than the district court judge who sat on this case for so many years? Your Honor, the district court, I think, overlooked a number of things. One is the answer in the complaint, I'm sorry, the answer to the first amended complaint filed by Montgomery County, and I had it and perhaps have lost it, but I will get you the JA site on my rebuttal. The county answered that limited site is necessary to effectively perform the duties of a customer service representative to, and I do have it, it's joint appendix 47, paragraph 33 of the answer. That was never amended. And you argued that to the district court, I assume? I don't recall specifically arguing that in any of the hearings, post trial hearings. It, of course, was in the record for the district court. The trial court also looked, to address your question, Judge Harris, also looked to the wrong precedent when deciding what she needed to find, and overlooked USV Gregory, which basically says that when there is a liability, injunctive relief in some form must be granted. And what's interesting about that is that the county, in its brief, agrees in a footnote and says, well, yes, that's right, whether systematic discrimination or systemic, perhaps, is the word, and I use them interchangeably, there needs to be injunctive relief, but the county went on to say, we think plaintiff didn't prevail in this case because she got no money. We don't think money is required, and we think the looking to Spencer is an error of law, because that was a sexual harassment case with a single rogue supervisor who was harassing a woman, and once the company learned, removed him from his position, the policy of no discrimination took effective steps. Mr. Esco, I read Gregory, I get your point about the language that was used, my sense is that we sort of backed away from that ironclad rule that in every case, injunctive relief, some kind of equitable relief is appropriate. And frankly, reading the Supreme Court cases on which Gregory seemed to rely on for their proposition, I had trouble finding that support for that. It doesn't seem to make logical sense that a district court would be so cabinet as to what he or she should do in a case. There are some cases where it's entirely appropriate that there be some kind of equitable relief, but it doesn't strike me as prudent to suggest that that should be an absolute rule. Is that, to your knowledge, is that the test across the circuits, or what's your sense of that, if you know? The court actually discussed a circuit split on that issue. I didn't keep score. We're clearly not suggesting that in 100% of the cases must, there must be. Well, literally, that's what it seems to say, right? Well, it does, but. Okay, so then what's, how do you qualify? Well, it was, of course, the issue is, in terms of reading it literally, there is the intervening Spencer case. But following Spencer, there is another Fourth Circuit case which we cite that goes back to the original standard. If, again, Spencer, the distinction between Spencer in this case, the most important distinction, is that Spencer was the illegal act of a single rogue employee who was dealt with once the issue was brought to attention. Right. But here, the district court, at least as I understand the characterization, as Judge Harris mentioned, Judge Chastanow has lived with this case for a long time. Her view of the county's actions were they never disputed the fact that they needed to reasonably accommodate your client. The only question was, how do we go about doing that? They might not have done it in the speed that satisfied you and or your client, but isn't that a little bit different than, for example, deliberate indifference throughout these proceedings, which, frankly, I don't think is a fair characterization of the county's actions. Well, throughout these proceedings, the county failed to accommodate Ms. Rae Azzedine and the decision tree that involved several layers of county management going up to an assistant county administrative officer, including some department heads, including the council's I think it's unfair to Ms. Rae Azzedine to suggest that this was really just a one-off event or a rogue employee. It was the county policy not to adequately accommodate Ms. Rae Azzedine. And I see I'm into my rebuttal time. Let's save some time. Thank you. Thank you. Ms. Kane. Thank you. May it please the court, the decision of the district court at the bench trial should be affirmed in this case because the plaintiff has a heavy burden of establishing the challenging standard of review. Specifically, she has failed to prove that the district court was clearly erroneous in its factual finding of reasonable accommodation and has failed to prove that the district court abused its discretion in denying her claims for equitable relief. The county's isolated previous failure to provide Rae Azzedine with and Rae Azzedine has been reasonably accommodated in her desired position at MC311. She is now working as a CSR2 at MC311. What about the appellant's concern going forward that the county may, could change things tomorrow that would cause problems for Ms. Rae Azzedine? Your Honor, there's absolutely no basis for that concern. The county has invested significant time, resources, and technology improvements in order to reasonably accommodate Ms. Rae Azzedine. There is no evidence in the record of any danger of a recurring future violation. As Judge Chasnow properly found, the discrimination or the failure to in, which were considered at the jury trial where the jury of not giving an effective accommodation, but that applied to a former position at a different location with different supervisors and it has no bearing on the landscape currently before the court, which is that Ms. Rae Azzedine is now working in her desired position at MC311 and has all of the tools she needs to perform her job in an effective manner. There was some discussion in the district court opinion about, perhaps in the record, about a civil innovation fact that was something that might enhance the ability of Ms. Rae Azzedine to do her work. And Judge Chasnow, I think, may have talked about this. What is the status of that? Is that still a work in progress? That's a very good question, Your Honor. And yes, it is. And it's currently been tested. Thomas Logan, who testified at the district court trial, tested it in August, I believe. And there is more testing that will need to be done. But it's nearing completion. The reason I ask that is Judge Chasnow seemed to think that that was important in some way. And I wonder if that's somehow inconsistent with her conclusion that the appellant had already been reasonably accommodated. If you needed this additional sort of innovation fact to complete the job, how is that consistent with her finding a reasonable accommodation? Your Honor, I think that's one of many accommodations that the county has made for Ms. Rae Azzedine. And right now, the evidence is undisputed that the IWAA, Internal Web Accommodation Application, that she uses, is actually more efficient in focusing in key search and doing a search on the knowledge-based articles and obtaining the result. Because Mr. Daniel, who designed the system, and Mr. Logan, the accessibility expert who tweaked it, were able to give her shortcuts that she could use to gather that information. However, the Siebel system is one that is natively accessible if Oracle follows through on the representations that it has made to the county. And that is another way that she could perform her job. She's able to do it now with the IWAA. And she is able to answer all of the inquiries that have come to her. So Judge Chasnow's finding that she has been reasonably accommodated addressed all of the personnel training that she has had, as well as the ability for her to, you know, she has her JAWS on the computer. She's got the Braille display, the Braille printer. She has also got the Braille CARES manual. She's had the Excel spreadsheet, the IWAA. And these are all tools that allow her to perform her job functions of answering a call, asking the questions, probing questions of the customer to determine what it is that they want, and then researching the knowledge-based articles, going to the CSR instructions and the customer with accurate information and answer their inquiry. The IWAA allows her to do that. It's one tool that works. IP16 is another way to do that. But in either event, she has been reasonably accommodated. But moving forward, because the county is attempting to be accessible in its future software upgrades, the county is implementing IP16 for the natively accessible solution. Obviously, that's a substantial array of things that the county has done. Mr. Espos characterizes all those things as having been done by the county while being dragged and kicking and screaming along the path, only with the threat of litigation hanging over its head. What's your view of the record? Very different, Your Honor. I'm not surprised. I think that the record will reflect that even back in, he went back to 2009 and 2010, and like the district court and Mr. Espos, I've lived with this case for seven years. Back at that period of time... So have I. That's correct. Thank you. Back at that time, the county did offer her other alternatives when her colleagues were transferred to MC311 and she turned down in favor of the job which the jury heard about at HHS in the Aging and Disabilities Unit. So at that point in time, the county was attempting to accommodate her. The county, as Judge Chasnow properly found, has always tried to accommodate her. The question is, did they get the right balance of making an effective accommodation? So what the jury heard about was only the job at HHS, which I think in this court's words was a cobbled together job with make work, and it was not a reasonable accommodation. But that job is no longer. She no longer works there and the county's failure to effectively accommodate her in that position has ended. She has now been reasonably accommodated for over two years in her position at MC311 and she had the opportunity for the collaborative job between the county and the CLB back in October of 2015. The jury never got to hear about that because when I attempted to ask her about that offer at the jury trial, counsel objected. The judge told them to fissure cut bait and what they did was they cut bait. They didn't want the jury to hear about that, so they ended her damages claim prior to October of 2015. So the jury decision has nothing to do with her current position. It was the old position. Since that time, there was the collaborative CLB county offer and she was transferred to MC311, her desired position, where she is working as a CSR2, answering and interviewing. May I ask you a question about her current position? So this shows up in the district court opinion in the briefing, although we haven't heard much about it today. I understood that one of the arguments the plaintiff was making is that this is not a reasonable accommodation and that even if it is a meaningful, equal employment opportunity, that's sort of the wrong question to ask. You have to ask whether it contains all of the essential functions of the job and it doesn't. Some of the What's your response to that? It's a restructured position, which is allowed under the ADA and the Vocational Rehabilitation Act and has been upheld by courts like the Bunn v. Corey Court or the Basis v. Cook County Court. Her position has been restructured so that she can perform the job duties. So what opposing counsel has argued is she doesn't have use of the CTI toolbar or maps. She doesn't need them in her current position. She has the IWAA. She's got her JAWS and she's got her ability to perform her job duties. I guess in its sort of bluntest form, the argument would be, I mean, I assume your position as an employer is that when a plaintiff proposes an accommodation, it's not reasonable unless it includes all of the job's essential functions. So why shouldn't it work vice versa? The defendant comes forward with a reasonable accommodation. It, too, should include all of the essential functions. I think that's the essence of restructuring, Your Honor, is that there's more than one way to perform an effective accommodation and the employer has the right to choose. And in this case, the employer doesn't have to choose the most expensive or the exact accommodation that the plaintiff has requested, but merely has to choose an effective accommodation. And Judge Chasnow has found, after sitting on this case for seven years, that this is an effective accommodation. And they have failed to prove that she was clearly erroneous in that factual finding. What about, I guess, part of the accommodation includes an ability to be promoted on comparable terms with her colleagues? And there's some question about that, I guess, because some of the limitations inherent in this position because of the accommodations, even if reasonable. What's your view about that? Your Honor, she has the same opportunity to be promoted as any other customer service representative to. If you look at the job class specifications for the supervisor position, she will have the requisite amount of time in the call center. And there's no requirement that she answer calls in all departments or that she answer calls in all of the tier two calls. So, for example, she answers tier two HHS calls. That is her focus. And the county attempted to allow her to answer tier one calls by implementing the press one option. She couldn't handle it. She testified she was overwhelmed. So, she went back to just answering the tier two HHS calls. But as far as being promoted, her supervisor, Robert Sinclair, who is also, if you look in the record, counsel mentioned twice in the record, is blind, has been able to work supervising people in queues that he never was involved in when he was a customer service representative. So, it doesn't matter that she doesn't answer all those calls. What matters is the way that a call is being handled. Are you being polite and are you asking the probing questions to find out the nature of the inquiry? Are you able to provide accurate information? And are you submitting your service requests? And those are all things that she can do and she could supervise someone to do. So, there is no concern on the county's part that she could apply, assuming that her work performance is acceptable and she's got the requisite time in which she's got two years now. So, she's had enough time to apply for a supervisor position if one were to open up. And she would be considered against the other applicants at that time. And the district court found that there was, and again, her findings were that there was not an issue with respect to the ability of the plaintiff to be promoted to a supervisor position. And again, the plaintiff must prove that that was a, that factual finding was clearly erroneous. The court found that below that plaintiff's current role, excuse me, plaintiff's current role allows her to attain an equal level of achievement, opportunity, and participation as her CSR2 peers. The county has provided her a reasonable accommodation and accordingly its discriminatory conduct has ceased. And the court also went into fact specific findings with respect to the minutiae type of complaints that the court found that she's able to do the functions of her job. Now, to the extent that this court says there is an essential function she can't do, then it's the restructuring that I discussed with Judge Harris in response to your questions. The important thing here is that she has been reasonably accommodated in her position and that there is no danger of a recurring violation. The mere fact that she may have suffered a harm in the past does not mean she's entitled to a permanent injunction going forward, which this court has recognized. An injunction will not be granted against something merely feared as liable to occur at some indefinite time in the future. There has to be a danger, a cognizable danger of a recurrent violation and that does not exist here. The county has done everything it can to reasonably accommodate her. In fact, in some of the trainings there was other people who have come as CSRs to MC311 typically trained in groups of 8 to 10. She had customized training all by herself. She was trained by the 311 call center trainer, by the HHS business analyst, by her own supervisor, by the call center manager. She was trained by the CARES, which is a state database that she uses to answer HHS tier 2 calls. She was trained by the person who works with that. In that CARES training, it was not only one-on-one training, it was six-on-one training because we had Doug Lee there who was a scripting expert for the CARES manual. We had Thomas Logan who was the county's accessibility expert. We had her supervisor. We had the CARES trainer. We had CSRs who did these type of calls to work to make sure she could access all of the screens and answer all of the questions. The county has invested significant time and resources and personnel to try to make sure that she has the tools she needs to do this job. In doing that, she has been reasonably accommodated. The second point I believe I've already made that the ineffective accommodation that the jury heard about has ended. It no longer exists. Two years ago today, Rae Azzedine was notified that she would be transferred to MC311. She was informed she would be working as a CSR2 answering HHS calls and researching HHS KBAs. She was given the opportunity to appeal or agree to that decision and she chose not to. She accepted that position knowing it would be only HHS calls and that she would not be answering calls for other departments. Importantly, she has never asked the county's program disability manager for any accommodations. Nor has she testified. In fact, despite her attorney's claims that she has not been reasonably accommodated and that she'll suffer future harm, she never testified live at the bench trial. When she did last testify, it was at her deposition in February of 2017. She testified in direct contravention to the arguments made by counsel. She admitted in her deposition that she was satisfied in her job as a CSR2 at MC311, or at least not dissatisfied. Specifically, at JA1548, she was asked, with respect to your job at MC311, are you unsatisfied with your current position for any reason? Answer, no. One point that I also wanted to make regarding her accommodations, which counsel claims are not reasonable accommodations, it's curious because their expert at the first trial, Tomiko Richardson, basically recommended as alternative accessible solutions, these same two types of processes. What Ms. Richardson proposed at JA232 to 235 was two alternative solutions where the county would take information that was stored in Siebel and provide it to Ray Azzedine, either on a form in Excel or on a web page. Richardson testified that the information on Siebel was stored in Siebel. The county did develop the Excel spreadsheet, which allowed Ms. Ray Azzedine to research the KBAs and perform her job duties answering HHS questions. She had problems with the CAPTCHA, the scrambled letters that show you're not a robot. The county, even though that was an accessible solution because there was an audio to it, she was having trouble with it. I think Judge Chasnow's opinion doesn't mention, but Chris Daniel testified at the trial at JA1097, that the reason she was having trouble with the CAPTCHA was her trouble hearing it. The county, in response to that, went to the second process that had been recommended by the Web Accommodation Application, or the IWAA. That is compliant with the Web Content Accessibility Guidelines. It allows her to access over 3,000 KBAs, including having a filter for just the HHS KBAs. She can submit the service requests. Doesn't have a CAPTCHA. She helped test it. She's testified it's made her job duties easier. The county invested 440 person hours to develop, build, test, and deploy the IWAA. Again, she tested it. Your red light is on, so I need you to wrap it up. Okay. Your Honor, the last thing that I would mention is that the court, the plaintiff has failed to prove that there's a danger of a recurring violation here. They failed to prove that the district court abused its discretion in its findings of fact or application of the law. Under the Rehabilitation Act, the county reasonably accommodated Riazadeen. It restructured the CSR2 position to fit her capabilities and skills, and it has a contract in place nearing completion for the IP16. With respect to the Gregory case relied upon, and I think the court has noted that there's little support for that. And in that case, there was also a discriminatory policy practice and procedure that was continuing at the time of the court's hearing where there had been approximately, I think it was 30 vacancies for a deputy sheriff position. Women had applied. Many were qualified. Never been hired. Ongoing at the time. In this case, the... Jane, I indicated to you that your time was up, so you need to wrap it up, like, right now. I'm sorry, Your Honor. I looked at this, and I thought it said I had two minutes left. I didn't realize the time was going up. Red means stop. I so apologize, Your Honor. And thank you. We would ask that the district court's findings of fact and rulings of law be affirmed. Thank you very much. Mr. Rescoe. Thank you, Your Honor. It's interesting. I find the county's argument today to be compelling reason why there needs to be an injunction. The county represents that it will perhaps have Ms. Rae Azzedine working on the Siebel system if the upgrade that they're doing that they originally said would be finished in either March or May, I don't remember, would allow accessibility. It's simply if someone gives it to us, we'll do it, rather than we are going to make this happen. Well, I think she more accurately, Ms. Cain, I think, more accurately characterized it as improving, perhaps, accessibility, but not necessarily detracting from the accessibility that's already been provided. She did, Your Honor, but she said, this I took very careful notes of, she said, if Oracle follows through on its representations, so no statement even today that no matter what Oracle does, we will make the Siebel system accessible to Ms. Rae Azzedine as is set out in the briefing that it is possible to do. I would also, the county represents that Ms. Rae Azzedine can perform her job, and that's true. She can perform the job she has as it has been sort of narrowed from what everyone else does, and it was the county that maintained all of these features were essential, and now is saying, well, it doesn't matter that she can't do them, but as with the possibility of promotion, what the county has done is stripped away most of what it called the essential functions of the job, and I think to say that, well, someone could get promoted in that category is really very different from saying we would promote somebody who has performed none of the... Has she sought a promotion? She has not to date, Your Honor, but it's really very different than she will have done none of the entry level material. She won't be able to tell you, she won't be able to go through the maps, and her performance is... I just feel like, I keep coming back, I just want to give you, I mean, I understand what you're saying, I think, that sort of as a matter of common sense, you would think that if you strip the essential functions out of the job and reallocate them, it's, you know, there's a decent chance the job you're left with just can be as good as the old one because you're not doing the essential functions anymore, you're less likely to be promoted, it will seem less important to the employer, but I feel like the first time this court heard this case, we sort of said the check on that is that we're going to look hard at whether this new job, absent some of the essential functions, is really what I can't remember the phrase, but a meaningfully equal employment opportunity. That's the check on that, to make sure that that doesn't happen, that when you strip out these essential functions, you're not leaving people in second class jobs. But the district court did that here, took our mandate, ran with it, had a bench trial, and concluded that this is a case in which even without some of these what had been deemed essential functions of the job, the restructured job is just as good as the old one. So, again, I don't know how to get past that. Well, Your Honor, I think two things. One is the – there seems to be no limit to – in that construct to how many essential functions could be taken away from Ms. Rae Azzedine to leave her. It just – I'll tell you what the limit is. It has to be a meaningfully equal employment opportunity. That's a pretty serious limit. And I think the district court seems to have taken it pretty seriously. Well, then that – if that is the way to cabin the county's ability, then that is what should be in an order. Once this case terminates without an order, the county is free to do or not do whatever it chooses. And we think the record clearly shows a track record of doing very little. I see my time is up. For those reasons as well as those in the brief, the judgment should be vacated and this case should be remanded for entry of relief. Thank you. Thank you, Mr. Resko. I appreciate the arguments. We'll come down and re-counsel and move on to our next case.
judges: Albert Diaz, Stephanie D. Thacker, Pamela A. Harris